# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MICHAEL SONNER,

      Petitioner,

vs.

RENEE BAKER, *et al.*,

      Respondents.

2:00-cv-1101 KJD-CWH

**ORDER**

      This is an action for habeas relief under 28 U.S.C. § 2254 brought by Michael Sonner, a Nevada prisoner sentenced to death. Respondents have filed a motion to dismiss in response to Sonner's amended petition for writ of habeas corpus. ECF No. 132. As the bases for their motion, respondents contend that several claims in the petition are time barred by 28 U.S.C. § 2244(d) and that several claims are barred by the doctrine of procedural default. Respondents also argue that some of Sonner's claims are not cognizable in an action brought under § 2254.

      Sonner has filed an opposition to the motion (ECF No. 154) and a related motion for an evidentiary hearing (ECF No. 156). Both motions have been fully briefed. Having considered the parties' arguments and relevant portions of the record, the court concludes as follows.

1        I. *Background*

2        In an opinion affirming Sonner's conviction and sentence, the Nevada Supreme

3  Court recounted the factual background of this case:

4            On the evening of November 30, 1993, a red sport utility vehicle stopped at the
         Trinity Truck Stop at the junction of Interstate 80 and Highway 95, twenty-three miles
5        west of Lovelock. After pumping $22.00 worth of gas, the driver left without paying.

6            Trooper Carlos Borland was alerted to what had occurred at the truck stop and
         eventually halted the red Chevy Blazer near Lovelock. Prior to the stop, the Chevy
7        Blazer and Borland's patrol car both passed Steven and Doyle Anderson. As the
         Andersons approached the patrol car and the Blazer, Steven Anderson saw Trooper
8        Borland lying on the ground and the Blazer pulling away from the shoulder. The
         Andersons stopped to help the stricken officer. Another passing motorist, Jerold
9        Burkhart, also saw the Blazer speed away. Burkhart stopped and used Borland's radio
         to summon help. Borland was transported by ambulance to the Pershing General
10       Hospital emergency room where doctors vainly attempted to stabilize him before he
         succumbed to a gunshot wound to the head. The Andersons and Burkhart testified that
11       Borland's pistol was still in its holster.

12           On December 1, 1993, a stolen red Chevy Blazer was found abandoned in
         Churchill County. Shoe prints were observed leading away from the vehicle in the
13       direction of the Clan Alpine Mountains. A helicopter reconnaissance team eventually
         saw what appeared to be a campfire several miles from the Blazer. A S.W.A.T. team
14       landed, and a standoff ensued during which Sonner appeared suicidal when he raised
         his weapon in the direction of the officers in an attempt to draw their fire. The officers
15       fired two shots, and although Sonner was not hit, he dropped his gun and surrendered.
         At trial, Sonner never disputed that he killed Trooper Borland. A jury convicted
16       Sonner of first-degree murder with use of a deadly weapon and sentenced him to death.

17  *Sonner v. State*, 112 Nev. 1328, 1332-33 (1996), *modified on rehearing on other grounds*, 114 Nev.

18  321 (1998). In a subsequent opinion, issued after a rehearing and still affirming the conviction and

19  sentence, the Nevada Supreme Court set forth further background information regarding Sonner's

20  trial and sentencing:

21           Sonner was tried in September 1994. The jury found him guilty of one count
         each of first-degree murder with use of a deadly weapon, ex-felon in possession of a
22       firearm, possession of a stolen vehicle, and resisting a public officer. At the penalty
         hearing, the state presented evidence that Sonner had been convicted of robbery and
23       assault with a deadly weapon on a peace officer in North Carolina, was a fugitive from
         North Carolina, had robbed and raped a woman in Virginia, and had shot to death two
24       people in Texas. His presentence report showed that he had eleven prior felony
         convictions.
25
             The jury found that the murder was committed under five aggravating
26

                                                      2

circumstances:  Sonner was under sentence of imprisonment; Sonner had previously been convicted of two felonies involving the use or threat of violence (each prior conviction was listed as a separate aggravating circumstance); the murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody; and the victim was a peace officer, which Sonner knew or reasonably should have known, killed while engaged in the performance of his official duty.  The jury found four mitigating circumstances:  the murder was committed while Sonner was under the influence of extreme mental or emotional disturbance; he was subject to neglect as a child; he was subject to abuse as a child; and he had never denied culpability for his criminal conduct.  The jury returned a sentence of death.  The district court also adjudicated Sonner a habitual criminal.

On October 28, 1994, the district court entered a judgment of conviction and sentenced Sonner to death for the murder, a consecutive prison term of six years for ex-felon in possession of a firearm, a consecutive term of life in prison without possibility of parole for possession of a stolen vehicle and habitual criminality, and a consecutive prison term of six years for resisting a public officer.

*Sonner v. State*, 114 Nev. 321, 322-23 (1998).

After the Nevada Supreme Court affirmed his conviction and sentence, Sonner's petition for a writ of certiorari to the United States Supreme Court was denied on October 5, 1998.  *Sonner v. Nevada*, 525 U.S. 886 (1998).

On January 8, 1999, Sonner filed a petition for a writ of habeas corpus in the state district court.  On September 29, 1999, the state district court denied that petition, and on June 9, 2000, the Nevada Supreme Court dismissed Sonner's appeal.  The Nevada Supreme Court issued its remittitur on July 6, 2000.

Sonner initiated this federal habeas corpus action on September 11, 2000, by submitting his initial federal petition to the court and paying the filing fee.  ECF Nos. 1 and 2.  On October 19, 2000, the court granted Sonner's motion to proceed *in forma pauperis* and his motion for appointment of counsel, and directed the clerk to file his petition.  ECF Nos. 3 - 5.  Counsel undertook representation on April 23, 2001.  ECF No. 12.

Discovery proceedings (first informal, then formal) ensued and did not conclude until October of 2004.  On January 3, 2006, Sonner filed an amended petition for a writ of habeas corpus.  ECF No. 96.  On June 5, 2006, respondents filed a motion to dismiss (ECF No. 103) asserting that many of the

3

1   claims in the amended petition are barred by the statute of limitations, that many of the claims in the
2   amended petition are unexhausted in state court, and that certain claims in the amended petition are
3   not cognizable in this federal habeas corpus action.  Sonner responded by filing a motion for stay and
4   abeyance (ECF No. 108), which the court granted (ECF No. 113).

5       From December 21, 2006, to January 9, 2012, proceedings were stayed to allow Sonner to
6   exhaust state court remedies for claims contained in his amended petition.  ECF Nos. 113-128.
7   During the stay, Sonner returned to state district court and filed a second state habeas petition on
8   February 1, 2007.  The state district court determined that only four of Sonner's claims were properly
9   before the court and ordered him to file an amended petition containing only those four claims.  The
10  district court ultimately found those claims to be without merit.  On appeal, the Nevada Supreme
11  Court affirmed the lower court's decision to deny relief, but concluded that all of Sonner's claims
12  were procedurally barred as untimely under Nev. Rev. Stat. § 34.726(1) and successive under Nev.
13  Rev. Stat. § 34.810(1).

14      As noted, proceedings were reopened in this case on January 9, 2012.  ECF No. 128.  On April
15  20, 2012, respondents filed the motion to dismiss that is addressed herein.  ECF No. 132.

16      II.  *Timeliness*

17      The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year
18  filing period for § 2254 habeas petitions in federal court.  28 U.S.C. § 2244(d)(1).  The one-year
19  period begins to run from the latest of four possible triggering dates, with the most common being the
20  date on which the petitioner's state court conviction became final (by either the conclusion of direct
21  appellate review or the expiration of time for seeking such review).  *Id.*  Statutory tolling of the one-
22  year time limitation occurs while a "properly filed" state post-conviction proceeding or other
23  collateral review is pending.  28 U.S.C. § 2244(d)(2).

24      Here, Sonner's conviction became final on October 5, 1998, the date on which the United
25  States Supreme Court denied his petition for writ of certiorari in relation to his direct appeal.  As

26

4

1    recounted above, Sonner's state petition for collateral review was pending from January 8, 1999, until

2    July 6, 2000.  Thus, he is allowed statutory tolling for that period.

3          Respondents concede that Sonner filed his initial petition within the one-year filing period

4    under § 2244(d)(1).[1]  Respondents argue, however, that Sonner's amended petition was filed after the

5    one-year period had elapsed and that, as a result, nearly all of the claims in that pleading are time-

6    barred from federal court review because they do not "relate back" to the initial petition.

7          The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a

8    habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition

9    and, therefore, be considered timely under 28 U.S.C. § 2244(d).  In *Mayle*, the Court held that the

10   Ninth Circuit's relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now Rule

11   15(c)(1)(B)),[2] which allowed an amendment to a habeas petition to "relate back" to the date of the

12   original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or

13   sentence," was too broad.  *Id*. at 656-57.  The Court held that an amended claim in a habeas petition

14   relates back for statute of limitations purposes only if it shares a "common core of operative facts"

15   with claims contained in the original petition.  *Id*. at 663-64.  The common core of operative facts

16   must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R.

17   Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief.  *Id*. at 661.

18         According to the respondents, all of the claims in the amended petition, except for Claims G,

19   H, I, GG, II, PP4, TT2, TT10, XX, YY, GGG, HHH, III, JJJ, and KKK, are untimely because none of

20   them rely on the same operative facts previously presented in the initial petition.  Sonner raises

21   several arguments as to why some or all of his claims are not time-barred.  First, he argues that the

22   _____

23         [1]  Using the finality of Sonner's conviction as the applicable trigger date, and tolling the statute
      from January 8, 1999, until July 6, 2000, 160 days of the one-year period had elapsed when Sonner
24   initiated the action herein on September 11, 2000.

25         [2]  Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic
      purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

26

5

statutory period did not begin in 1998 with the finality of his conviction (under subparagraph (A) of 28 U.S.C. § 2244(d)(1)), but instead in 2004 when an unconstitutional "impediment to filing an application" was removed (under subparagraph (B)) and when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" (under subparagraph (D)).

According to Sonner, the statutory period began when he "received the last of the discovery from the Nevada Department of Investigations" in October of 2004.  ECF No. 154, p. 124.[3] Strangely, however, he supports his argument with nothing more than several pages of procedural history, with no explanation as to why either subparagraph (B) or (D) applies in this case.  *Id*., p. 124-28.  Moreover, as respondents point out, subparagraph (D) applies to each claim in a habeas application on an individual basis.  *Mardesich v. Cate*,  668 F.3d 1164, 1170-71 (9th Cir. 2012).  Thus, even if Sonner established that the provision applied to a particular claim or claims (which he has not attempted to do), that would not affect the timeliness of his remaining his claims.

Next, Sonner contends that Claims TT11, TT12, ZZ, and AAA are timely because they relate to claims raised in his initial petition.  Specifically, he argues that Claims TT11 and TT12 relate back to Claim 10(2) and that Claims ZZ and AAA related back to Claim 8(2).

In Claim 10(2) of his initial petition, Sonner alleged that his received ineffective assistance of counsel because his trial counsel "failed to call Dr. Brandenburg during the penalty phase, or to otherwise present evidence of my ability to adjust to incarceration."  ECF No. 4, p. 11.  According to Sonner's amended petition, Dr. Brandenburg was a psychologist employed by Lakes Crossing Center in Sparks, Nevada, where Sonner was admitted in January of 1994 to determine his competency.  ECF No. 96, p. 270.  At a competency hearing held in March of 1994, Dr. Brandenburg testified that Sonner was a "model inmate" during his stay at Lakes Crossing.  *Id*.

---

[3]      Citations to page numbers for electronically filed documents are based on the ECF pagination.

1    Claim TT11 alleges that "reasonably competent counsel would have presented the testimony

2 of an institutional adjustment expert, both as evidence in mitigation and in rebuttal of the aggravating

3 evidence presented by the state," while Claim TT12 alleges that trial counsel was ineffective in failing

4 to call "mental health experts to testify as to petitioner's mental disorders and to explain the

5 effects of those disorders on petitioner's conduct and behavior as it relates to mitigation." *Id.*, pp.

6 272, 274.

7    Claim TT11 shares a common core of operative facts with Claim 10(2) of Sonner's initial

8 petition.  As such, Claim TT11 is not time-barred.  Claim TT12, on the other hand, is premised on

9 allegations that mental health experts had diagnosed Sonner with a wide variety of mental disorders,

10 including bipolar disorder, cyclothymic disorder, borderline personality disorder, organic personality

11 disorder, elements of an antisocial personality, and organic brain damage, and that trial counsel had

12 not adequately presented this information in the penalty phase of the trial.  Claim TT12 relies on a

13 core of operative facts that are clearly distinct from those supporting Claim 10(2), thus it does not

14 relate back to the initial petition.

15    In Claim 8(2) of his initial petition, Sonner alleged that Nevada's death penalty statute is

16 unconstitutionally vague because "it allows the use of unspecified non-statutory aggravating

17 circumstances."  ECF No. 4, p. 11.  Claim ZZ alleges that Nevada's death penalty statute is

18 "unconstitutionally vague because it permits introduction at the penalty phase of evidence outside the

19 nine areas of aggravating circumstances," while Claim AAA alleges that the statute's "use of

20 unadjudicated prior acts as evidence in the penalty phase under NRS 175.552(3), and as an 'other

21 matter' relevant to sentence violates both the Eighth and Fourteenth Amendments."  ECF No. 96, pp.

22 309, 312.

23    Claim ZZ claim shares a common core of operative facts with Claim 8(2) of Sonner's initial

24 petition.  As such, Claim ZZ is not time-barred.  The operative facts supporting Claim AAA,

25 however, are nowhere to be found in Claim 8(2), those being two witnesses testifying at Sonner's

26

1   penalty hearing about unadjudicated criminal acts committed by Sonner.  Because Claim AAA relies

2   on a core of operative facts that are absent from those supporting Claim 8(2), it does not relate back to

3   the initial petition.

4         Finally, Sonner contends that, due to several circumstances, he is entitled to equitable tolling

5   of the statute of limitations.  According to Sonner, these circumstances include (1) post-conviction

6   counsel's ineffective assistance and abandonment of Sonner, (2) Sonner's reliance on this court's

7   orders regarding discovery and extensions of time to file an amended petition combined with the

8   State's delay in producing discovery and failure to object to the extensions, and (3) Sonner's mental

9   illness.

10         The Supreme Court has held that, in appropriate cases, equitable tolling is applicable to the

11   statute of limitations imposed by § 2244(d).  *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).  Under

12   *Holland*, a habeas petitioner is entitled to equitable tolling only if he can show "(1) that he has been

13   pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and

14   prevented timely filing."  *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))

15   (internal quotation marks omitted).  The application of equitable tolling is "highly fact-dependent."

16   *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005); *Whalem/Hunt v. Early*, 233

17   F.3d 1146, 1148 (9th Cir. 2000); *see also Holland*, 130 S.Ct. at 2565 ("often fact-intensive").  "[T]he

18   threshold necessary to trigger equitable tolling ... is very high, lest the exceptions swallow the rule."

19   *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292

20   F.3d 1063, 1066 (9th Cir. 2002), and *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

21         As for the performance of post-conviction counsel as grounds, the law in this circuit has long

22   been that mere ineffective assistance of post-conviction counsel will not suffice, but "where an

23   attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance'

24   warranting equitable tolling of AEDPA's statute of limitations."  *Spitsyn v. Moore*, 345 F.3d 796, 800

25   (9th Cir. 2003) (citing *Ford v. Hubbard*, 330 F.3d 1086, 1106 (9th Cir. 2003)).  *Holland* did not disturb

26

8

1   this standard.  *See Holland*, 130 S.Ct. 2564-65.

2        Here, Sonner's allegations of ineffectiveness focus primarily on counsel's alleged lack of

3   experience handling capital cases.  He makes only broad allegations of ineffectiveness (e.g., counsel

4   failed to identify, investigate, develop, and present substantial habeas claims) and fails to establish

5   causal relationship between counsel's performance and the lateness of his amended federal petition.

6   *See Spitsyn*, 345 F.3d at 799 ("The prisoner must show that the 'extraordinary circumstances' were

7   the cause of his untimeliness.").  Likewise, Sonner's claim that counsel abandoned him also lacks

8   specificity and pales in comparison to the circumstances described in *Holland* and *Maples v. Thomas*,

9   132 S.Ct. 912 (2012), the two cases upon which he relies.[4]

10       Sonner cites to *Crump v. Warden*, 114 Nev. 590 (1998), and *Martinez v. Ryan*, 132 S.Ct. 1309

11  (2012), as support for his claim that his state post-conviction counsel's performance may provide

12  grounds for equitable tolling.  Those cases recognize a habeas petitioner's right, in certain

13  circumstances, to effective assistance of post-conviction counsel.  There is some merit to this

14  argument given that the Ninth Circuit has, in the past, denied tolling on the ground that petitioner

15  enjoyed no such right.  *See Miranda v. Castro*, 292 F.3d 1063, 1067–1068 (9th Cir. 2002) (holding

16  appointed counsel's miscalculation of the AEDPA limitations period was not grounds for equitable

17  tolling because petitioner has no right to effective assistance of counsel during the post-conviction

18  phase).  Notwithstanding *Crump* and *Martinez*, however, Sonner still must meet the "extraordinary

19

20       [4] In *Holland*, the Supreme Court held that equitable tolling was available based on evidence that
petitioner's attorney failed to do the following:  file a timely federal habeas petition despite prisoner's
21  many admonitions on the importance of doing so, conduct the research necessary to the ascertain filing
deadline even though the prisoner's letters went so far as to identify the applicable legal rules, provide
22  the prisoner with information that he had requested so that he could monitor the case, and communicate
with the prisoner over a period of years.  *Holland*, 130 S.Ct. at 2564.

23

24       In *Maples*, the Supreme Court held that the petitioner could establish cause for failing to file a
timely notice appeal in his state post-conviction proceeding where the petitioner, unbeknownst to him,
25  was not only left without any functioning attorney of record, but the continued listing of his former
attorneys as his representatives on court's docket meant that he had no right personally to receive notice.
26  *Maples*, 132 S.Ct. at 927.

9

1  circumstances" standard.  He fails to do so.

2      Sonner's claimed reliance on the court's scheduling of the proceedings herein presents a closer

3  question.  Consistent with the common procedure in effect at the time, this court allowed a

4  considerable amount of time for Sonner to conduct discovery.  Sonner filed his initial motion for

5  leave to conduct discovery in November of 2002.  ECF No. 55.  That motion was unopposed (ECF

6  No. 56), but discovery issues continued to be litigated for well over a year (ECF Nos. 60-74).

7      On May 25, 2004, the court entered an order allowing Sonner 120 days to complete discovery,

8  and 60 days beyond that period to file an amended petition.  ECF No. 75.  On November 9, 2004,

9  Sonner, noting that discovery had not been completed until early October, filed a motion asking for an

10  additional 90 days to file the amended petition.  ECF No. 76.  The court granted that extension,

11  setting February 25, 2005, as the new deadline for the amended petition.  ECF No. 77.  Sonner

12  subsequently sought and obtained four more extensions of time before filing the amended petition.

13  ECF Nos. 79, 81, 89, and 91.

14      Sonner relies upon two Fifth Circuit cases to argue that he is entitled to equitable tolling based

15  on the court's scheduling orders:  *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998), and *Prieto v.*

16  *Quarterman*, 456 F.3d 511 (5th Cir. 2006).  In *Davis*, the court assumed without deciding that

17  equitable tolling was justified when the district court granted the petitioner's motion to extend the

18  time for filing beyond limitations period.  158 F.3d at 808 n. 2.  The court in *Prieto* granted equitable

19  tolling:

20      . . . Although AEDPA applied to Prieto's application, the district court's order granting
         him additional time for the express purpose of filing his petition at a later date was
21      crucially misleading.  Prieto relied on the district court's order in good faith and to his
         detriment when he filed his petition.  As Prieto submitted his petition within the time
22      expressly allowed him by the district court, he is entitled to equitable tolling.

23  456 F .3d at 515.

24      In both *Davis* and *Prieto*, however, the petitioner moved for, and was granted, an extension of

25  time that set the deadline for filing his initial habeas petition beyond the AEDPA limitations period.

26

10

1   *Id.*  The court in *Prieto* noted a "critical distinction" between a scheduling order issued prior to the

2   AEDPA deadline and one issued after the deadline.  *Id*. at 516.  According to the court, only the

3   former creates "the likelihood that a district court's order will actually mislead a petitioner into

4   believing that his petition is due beyond the AEDPA limitations period."  *Id*.

5          This case bears little similarity to *Davis* or *Prieto*.  Sonner's filed his initial petition with 205

6   days remaining in the one-year statutory period.  The statutory deadline passed about the time counsel

7   appeared in this action on Sonner's behalf.  Sonner then conducted discovery in anticipation of filing

8   an amended petition.  The court granted numerous extensions of time in relation to both discovery

9   proceedings and the deadline for the amended petition, most, if not all, of which were unopposed.

10  None of the court's orders, however, came with any assurance or suggestion that new claims for relief

11  in the amended petition would relate back to the initial petition for timeliness purposes.

12         The respondents concede that Sonner is entitled to equitable tolling from the time he initiated

13  this proceeding until the court appointed current counsel and that, arguably, tolling should be

14  extended until the court issued its scheduling order in December of 2002.  ECF No. 132, p. 9.

15  However, even if equitable tolling were to be extended until Sonner completed discovery, discovery

16  proceedings were completed in early October of 2004.  Sonner did not file his amended petition for

17  another fifteen months.  The court also notes that the amended petition was filed more than six

18  months after the Supreme Court decided *Mayle*, which removed any uncertainty as to the relation

19  back doctrine as applied to habeas petitions.  In sum, neither the court nor the respondents prevented

20  Sonner from filing his habeas claims within the statutory period.

21         Lastly, Sonner argues that his mental impairments provide grounds for equitable tolling.  To

22  support this argument, he provides a three-page description of his various impairments, then notes

23  that these impairments prevented him from understanding legal proceedings and from assisting

24  counsel with his defense.  ECF No. 154, p. 139-42.

25         In *Bills v. Clark*, the Ninth Circuit held that eligibility for equitable tolling due to mental

26

11

impairment requires the petitioner to meet a two-part test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of circumstances, including reasonably available access to assistance.

628 F.3d 1092, 1099–1100 (9th Cir. 2010).

Thus, while mental illness may provide a basis for equitable tolling, a showing of mental illness alone will not toll the limitation period.  Under the second prong of the *Bills* standard, a petitioner must show that despite his "diligence in pursuing the claims to the extent he could understand them," his impairment was "a but-for cause of any delay."  *Id.*; *see also Ryan v. Gonzales*, 133 S.Ct. 696, 704 n. 6  (explaining that the "relevant questions" for equitable tolling purposes are whether the petitioner has been pursuing his rights diligently and whether some extraordinary circumstance stood in his way).

Here, even if Sonner meets the first prong of the *Bills* test, he falls well short of meeting the second prong.  As recounted above, Sonner has been represented by current counsel since April of 2001.  Sonner's alleged mental impairments notwithstanding, counsel filed, on his behalf, an amended petition that is 477 pages long and contains well over 100 claims and sub-claims.  Counsel make a general claim that Sonner's "mental illness impairs his ability to recognize and provide counsel with information that could support viable legal challenges to his conviction and death sentence."  ECF No. 154, p. 142.   Yet, there is no specific explanation as to how Sonner's alleged mental incompetency was the "but-for cause" of the delay that occurred between the time discovery

1   had been completed and the filing of the amended petition.

2        Based on the foregoing, Sonner has not established that extraordinary circumstances stood in

3   his way and prevented the timely filing of the newly-added claims in his amended petition.[5]  As such,

4   the court need not address the due diligence prong of the *Holland* standard.  The claims in the

5   amended petition that do not relate back to the initial petition are untimely and shall be dismissed on

6   that basis.  Those claims are as follows:  Claims A-F, J-Z, AA-FF, HH, JJ-OO, PP-WW (except for

7   PP4, TT2, TT10, and TT11), AAA-FFF, and LLL-YYY.

8        III.  *Procedural Default*

9        A federal court will not review a claim for habeas corpus relief if the decision of the state

10  court denying the claim rested on a state law ground that is independent of the federal question and

11  adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The Court

12  in *Coleman* stated the effect of a procedural default as follows:

13              In all cases in which a state prisoner has defaulted his federal claims in
              state court pursuant to an independent and adequate state procedural
14              rule, federal habeas review of the claims is barred unless the prisoner
              can demonstrate cause for the default and actual prejudice as a result of
15              the alleged violation of federal law, or demonstrate that failure to
              consider the claims will result in a fundamental miscarriage of justice.
16

17  *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

18        A state procedural bar is "independent" if the state court explicitly invokes the procedural rule

19  as a separate basis for its decision.  *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).  A

20  state court's decision is not "independent" if the application of a state's default rule depends on a

21  consideration of federal law.  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).  Also, if the

22  state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit

23  _____

24        [5]  The court has also considered, and finds no merit to, Sonner's argument that deficiencies in
      Nevada's capital trial, appellate, and post-conviction systems provide grounds for equitable tolling.
25      Even taking his allegations as true, he has not established a sufficient nexus between the deficiencies
      and his failure to file a timely amended petition.

26

1  has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio*

2  *v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir.

3  2003).

4        A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established

5  at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96

6  F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted).  In *Bennett v. Mueller*,

7  322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for

8  analyzing adequacy.  Under *Bennett*, the State carries the initial burden of adequately pleading "the

9  existence of an independent and adequate state procedural ground as an affirmative defense." *Id.* at

10  586.  The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may

11  do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure,

12  including citation to authority demonstrating inconsistent application of the rule." *Id.*  Assuming the

13  petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests

14  with the State, which must demonstrate "that the state procedural rule has been regularly and

15  consistently applied in habeas actions." *Id*.

16        Respondents argue that all of Sonner's claims except for Claims G, H, I, M1, M3, N, GG, II,

17  PP4, TT2, TT10, TT11, ZZ. GGG, HHH, and KKK are barred from federal review by the procedural

18  default doctrine.  In affirming the lower court's denial of Sonner's second state petition, the Nevada

19  Supreme Court concluded that "[b]ecause Sonner filed his petition nine years after this court issued

20  the remittitur form his direct appeal, the petition was untimely under NRS 34.726(1)."  ECF No. 138-

21  6, p. 3.  The court also held that the petition was procedurally barred as successive under NRS

22  34.810(1)(b)(2). *Id*., p. 3-4.  In addition the court rejected Sonner's arguments that he could

23  overcome the procedural bars by showing good cause and actual prejudice. *Id*., p. 4-7.

24        Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than one year after the

25  entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one year

26

1  after the Nevada Supreme Court issues its remittitur.  Nev. Rev. Stat. § 34.810 addresses successive

2  petitions and requires dismissal of claims that have already been raised and adjudicated on the merits,

3  as well as claims that could have been raised in an earlier proceeding, but were not.

4       Respondents contend that, as a result of the Nevada Supreme Court's dismissal of Sonner's

5  second state petition on procedural grounds, this court is barred by the doctrine of procedural default

6  from considering any claim that had yet to be exhausted when he initiated that proceeding.

7  Respondents meet their initial pleading burden under *Bennett* by asserting that both of the bars

8  applied to Sonner's second state post-conviction petition (Nev. Rev. Stat. § 34.726 and § 34.810)

9  constitute an independent and adequate state procedural ground for denying relief.  In response,

10  Sonner advances several arguments challenging the independence and adequacy of the procedural

11  rules.

12       First, Sonner argues that the Nevada Supreme Court's application of the timeliness and

13  successive petition bars is not independent because the court applies federal law in determining

14  whether the bars should be excused.  Under Nevada law, a petitioner may bypass either bar by

15  showing that the bar would result in cause and prejudice or a fundamental miscarriage of justice.

16  *Pellegrini v. State*, 117 Nev. 860, 886 (2001).

17       The Ninth Circuit has held, numerous times, that the two state procedural bars, Nev. Rev. Stat.

18  §§ 34.726 and 34.810, are independent state grounds.  *Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir.

19  2011) (listing cases so holding).  There may be instances in which the Nevada Supreme Court's

20  cause and prejudice or fundamental miscarriage of justice analysis is interwoven with federal law so

21  as to undermine the independence of the procedural bar at issue.  *See id.* at 332-33 (concluding that

22  bar was not independent because the Nevada Supreme Court explicitly relied on its federal *Brady*[6]

23  analysis as controlling the outcome of its state procedural default analysis).  That analysis must be

24  conducted, however, on a claim-by-claim basis.  *Id.*; *see also Nitschke v. Belleque*, 680 F.3d 1105,

25

26

---

[6]  *Brady v. Maryland*, 373 U.S. 83 (1963).

15

1110-11 (9th Cir. 2012).  In absence of any controlling legal authority to support his position, the court finds no merit to Sonner's argument that the bars at issue are not independent.

Next, Sonner argues that neither bar is adequate as a general matter or as applied in his particular case.  With regard to the general application of Nev. Rev. Stat. § 34.726, he asserts that the respondents' points and authorities in support of their motion to dismiss only address the adequacy of the bar as of 1996 and that his alleged default occurred in 1999.  In a footnote, Sonner cites to a sampling of cases that, according to him, demonstrate that the Nevada Supreme Court has not consistently or regularly applied Nev. Rev. Stat. §34.726 since 1996.  ECF No. 154, p. 39 n. 8.

Beyond the fact that none of the cited cases specifically reference Nev. Rev. Stat. § 34.726, the cases show, at most, that the Nevada Supreme Court, in some instances, may exercise its discretion to bypass an applicable procedural bar to reach the merits of a claim.  The court's exercise of discretion in these isolated cases does not necessarily render the rule inadequate to support a state decision in other cases.  *See Walker v. Martin*, 131 S.Ct. 1120, 1130 (2011) (explaining that a rule is not automatically inadequate "upon a showing of seeming inconsistencies" and that state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule").

Sonner also contends that the Nevada Supreme Court has inconsistently applied the "cause" standard in determining whether to excuse procedural bars.  Nev. Rev. Stat. § 34.726 provides that good cause sufficient to excuse the default exists if the petitioner demonstrates that the delay is not his fault.  According to Sonner, the Nevada Supreme Court has inconsistently applied this standard because it has found "cause" on the basis that the direct appeal was untimely, and because it has "reached diametrically opposite conclusions on whether an erroneous court ruling establishes 'cause' to review the merits of a constitutional claim in post-conviction proceedings, and whether a procedural rule that does not exist at the time of a purported default may preclude the review of the merits of meritorious constitutional claims."  ECF No. 154, p. 40 (footnote omitted).  He also

1   contends that the state supreme court treats the definition of "cause" differently in published opinions
2   than it does in those that are unpublished.

3      In the case cited by Sonner as an example of Nevada courts finding cause based on
4   petitioner's untimely direct appeal, the Nevada Supreme Court merely concluded that the lower court
5   did not abuse its discretion in finding that it should address the merits of a late post-conviction
6   petition because, due counsel's ineffectiveness, the petitioner did not have the opportunity to raise the
7   issues on direct appeal.  *Randle v. State*, Nevada Supreme Court Case No. 33677 (order of
8   affirmance, p. 2 n. 2 (September 3, 2002)).  The ruling was consistent with the Nevada Supreme
9   Court's established precedent that, to show good cause under § 34.726, a petitioner "must
10  demonstrate that an impediment external to the defense prevented him from raising his claims
11  earlier." *Pellegrini*, 117 Nev. at 886.

12      As for the decisions in which the Nevada Supreme Court has allegedly reached inconsistent
13  results regarding whether prior erroneous rulings establish cause and whether new procedural rules
14  apply retroactively, these also do not support the conclusion that the procedural rule is inadequate to
15  bar federal review.  The question under *Walker* is whether the Nevada Supreme Court was using its
16  discretion "to home in on case-specific considerations and to avoid the harsh results that sometimes
17  attend consistent application of an unyielding rule" or "to impose novel and unforeseeable
18  requirements without fair or substantial support in prior state law." *Walker*, 131 S.Ct. at 1130
19  (citations omitted).

20      The cases cited by Sonner (ECF No. 154, p. 40 n. 10 and 11) are, for the most part, examples
21  of the former, not the latter.  For instance, Sonner contends that the state supreme court's holding in
22  *State v. Haberstroh*, 119 Nev. 173 (2003), conflicts with  *Pellegrini* and, in addition, "leaves the
23  definition of cause completely amorphous and based on what the Nevada Supreme Court determines
24  on a particular occasion." ECF No. 154, p. 40 n. 11, 41.  In that case, the court reinforced its earlier
25  holding in *Pellegrini* that the *application* of Nevada's post-conviction procedural rules are mandatory,
26

1   not discretionary.  *Haberstroh*, 119 Nev. at 180.   As such, the court reasoned, a stipulation by the

2   parties to have the court bypass the rules is invalid.  *Id*.

3        The court noted, however, that the stipulation at issue preceded *Pellegrini* and that

4   Haberstroh, relying upon the stipulation, did not attempt to establish cause for his default.  *Id*. at 181.

5   Based on those circumstances, the court treated the stipulation as "establishing the facts to show cause

6   to raise the relevant claims but allowing consideration of the claims' merits only to determine the

7   question of prejudice."  *Id*.

8        By contrast, the post-conviction petition at issue in *Pellegrini* was filed more than ten years

9   after the conclusion of petitioner's direct appeal and nearly six years after the conclusion of his first

10  post-conviction appeal; and no compelling facts supported a finding of cause for the default.

11  *Pellegrini*, 117 Nev. at 869, 887-91.  Given its discrete factual background, the decision in

12  *Haberstroh* to address the merits of petitioner's claims is not inconsistent with the decision in

13  *Pellegrini* to procedurally bar the claims.  As for Sonner's assertion about *Haberstroh* creating

14  uncertainty as to the definition of cause, the opinion makes clear that the court's cause determination

15  is limited to the particular facts before it and that, in the future, stipulations to disregard the

16  procedural default rules would not constitute cause.  *Haberstroh*, 119 Nev. at 181.

17       At bottom, this court's job is to "carefully examine state procedural requirements to ensure

18  that they do not operate to discriminate against claims of federal rights."  *Id*.  Here, there is no basis

19  for concluding that the Nevada Supreme Court's application of Nev. Rev. Stat. § 34.726, in general,

20  operates to the particular disadvantage of petitioners asserting federal rights.

21       Sonner has not placed the adequacy of Nev. Rev. Stat. §34.726 at issue, as required by

22  *Bennett*.  *See King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006) (noting that when the Ninth Circuit

23  has "already made a determination regarding the adequacy of the state procedural rule, the petitioner's

24  method of placing the defense in issue must be modified"); *see also Ortiz v. Stewart*, 149 F.3d 923,

25  932 (9th Cir.1998) (holding that petitioner had not met his burden because the court had already held

26

18

1    the state procedural rule to be consistently applied and the petitioner failed to cite cases demonstrating

2    subsequent inconsistent application).  Accordingly, this court concludes that Nev. Rev. Stat. § 34.726

3    was a "clear, consistently applied, and well-established" procedural rule at the time of Sonner's

4    default.[7]

5            With regard to the adequacy of Nev. Rev. Stat. § 34.810, Sonner points out (and respondents

6    concede) that the Ninth Circuit ruled in *Valerio v. Crawford*, 306 F.3d 742 (2002), that the successive

7    petition bar is inadequate to bar federal review.  *See Valerio*, 306 F.3d at 777-78.  By citing to

8    *Valerio*, he has carried his burden under *Bennett;* and the burden "shifts back to the government to

9    demonstrate that the law has subsequently become adequate." *King*,  464 F.3d at 967.

10           Respondents argue that the Supreme Court's decisions in *Beard v. Kindler*, 558 U.S. 53

11   (2009), and *Walker* undermine the validity of *Valerio* because they establish that a discretionary

12   procedural rule can serve as an adequate ground to bar federal review.  Be that as it may, the cases do

13   not relieve respondents of their "ultimate burden" under *Bennett*.

14           The court in *Valerio* found that the bar was inadequate as of 1990.  *Valerio*, 306 F.3d at 778.

15   Because the analysis focuses on the time the purported default occurred and not when a state court

16   actually applies the bar, respondents must show that Nev. Rev. Stat. § 34.810 had become clear,

17   consistently applied, and well-established by the time of Sonner's first state post-conviction

18   proceeding (January 1999).  *See Petrocelli v. Angelone*, 248 F.3d 877, 886 (9th Cir. 2001) (citing

19   *Fields v. Calderon*, 125 F.3d 757, 760-62 (9th Cir. 1997)).  Cases decided after the time of the

20   purported default are generally irrelevant in determining the adequacy of the rule.  *See Lambright v.*

21   *Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001).  Moreover, in this instance, the inquiry is limited to

22   capital cases.  *See Valerio*, 306 F.3d at 776 (recognizing Nevada Supreme Court's "commendable

23   policy" in capital cases of exercising discretionary *sua sponte* power to overlook the successive

24

25           [7] Sonner has not convinced this court that the state supreme court had, during the relevant time
     period, a practice of treating the definition of "cause" differently in published opinions than it did in
     those that are unpublished.

26

                                                            19

1    petition bar).

2         Respondents cite to nine cases that potentially meet the foregoing criteria.  See ECF No. 164,

3    p. 29.  While this number is substantial given the relatively few opportunities the Nevada Supreme

4    Court has to apply the bar in capital cases, it is nonetheless insufficient to demonstrate that the bar

5    had become adequate between 1990 and January of 1999.  *Cf. Walker*, 131 S.Ct. at 1128-29

6    (concluding that California's timeliness rule is "adequate" based on the fact that, each year, the

7    California Supreme Court summarily denies hundreds of habeas petitions on timeliness grounds).

8    Thus, respondents have not carried their "ultimate burden" under *Bennett* with respect to Nev. Rev.

9    Stat. § 34.810.

10        Having concluded that the timeliness rule at Nev. Rev. Stat. § 34.726 is adequate, as a general

11   matter, to bar federal review, the court turns to Sonner's argument that the bar is inadequate as

12   applied in his particular case.  According to Sonner, he substantially complied with Nevada law in

13   filing his second amended petition, but the Nevada courts arbitrarily applied procedural bars to reach

14   a "novel and unforeseen result" and, in doing so, discriminated against his claims of federal rights.

15        As recounted above, the state district court in Sonner's second post-conviction proceeding

16   determined that only four of Sonner's claims were properly before the court and ordered him to

17   amend his petition accordingly.  ECF No. 136-4.  That order was issue *sua sponte* prior to any

18   response to the petition from the State.  Moreover, the state district court did not independently assess

19   whether the claims were barred under Nevada's procedural rules, but instead relied on language in

20   this court's stay order (ECF No. 113) as the basis for concluding that all but four of Sonner's claims

21   were untimely and successive.

22        Recognizing that the state district court's treatment of Sonner's petition was misguided, the

23   the State filed a motion for reconsideration in which it noted its belief that the state district court was

24   "premature" in requiring Sonner to abandon all but the four claims and that, if Sonner was not

25   allowed an opportunity to show good cause and prejudice to overcome the procedural defaults, "the

26

20

1   Nevada Supreme Court will certainly remand this case to give him one." ECF No. 136-6, p. 5.

2   Sonner, after also filing a motion for reconsideration, filed an amended petition in compliance with

3   the state district court's order. ECF No. 136-16. The state district court subsequently denied both

4   motions for reconsideration and directed the State to respond to the amended petition. ECF No.

5   136-20.

6        Although Nev. Rev. Stat. § 34.726 explicitly includes a good cause and prejudice exception,

7   Sonner, despite his best efforts, was never afforded a hearing or a decision in the state district court on

8   whether he could meet the exception.[8] On appeal, the Nevada Supreme Court recognized that the

9   state district court erred in summarily dismissing all but four of Sonner's claims, but concluded that

10  Sonner could not establish cause and prejudice to excuse the default of his claims. ECF No. 138-6.

11  In doing so, the court rejected his argument that the case must be remanded to the district court for an

12  evidentiary hearing or, at minimum, a ruling on his allegations of cause and prejudice.

13       A rule that has been established as adequate can be deemed inadequate as applied in particular

14  circumstances. *Collier v. Bayer*, 408 F.3d 1279, 1284 (9th Cir. 2005) (citing *Lee v. Kemna*, 534 U.S.

15  362, 376 (2002)). While application of the timeliness bar in this case was foreseeable, the *manner* in

16  which it was applied by the state district court was indisputably erroneous and could not have been

17  anticipated.

18       Citing to several Nevada cases,[9] Sonner argues that the Nevada Supreme Court also applied

19  the bar in a novel and unforeseeable manner, thereby unfairly depriving him of his right to present his

20  federal claims. The cited cases establish that the state district court, not the state supreme court, is

21

22  _____

23      [8] A hearing was held on the State's motion to dismiss based on procedural defaults, but the hearing was confined to the four claims raised in Sonner's amended state petition. ECF No. 136-42.

24  The state district court denied the State's motion and addressed the four claims on the merits. ECF No. 137-14. At no point did the state district court make a cause and prejudice determination.

25      [9] *Nevada v. Eighth Judicial District (Riker)*, 121 Nev. 225 (2005); *Byford v. State*, 123 Nev. 67 (2007); and *Nika v. State*, 120 Nev. 600 (2004).

26

1   required to apply the procedural default rules in the first instance, conduct an evidentiary hearing if

2   the petitioner supports his claims with specific factual allegations that if true would entitle him to

3   relief, and issue specific findings of fact and conclusions of law supporting its disposition of the

4   claims. *Byford*, 123 Nev. at 68; *Nika*, 120 Nev. at 607; and *Riker*, 121 Nev. at 233.

5       The Nevada Supreme Court affirmed the state district court's decision despite the lower

6   court's failure to comply with any of these requirements.  While Sonner may or may not have been

7   able establish good cause and prejudice to excuse his timeliness default in state court, both Nevada

8   case law and the plain language of Nev. Rev. Stat. § 34.726 itself required that he be given, at least,

9   an opportunity to do so.  Because he was deprived of that opportunity, this is an "exceptional case[] in

10  which exorbitant application of a generally sound rule renders the state ground inadequate to stop

11  consideration of a federal question." *Lee*, 534 U.S. at 376.

12      Based on the foregoing, this court concludes that state procedural rules applied to Sonner's

13  second amended petition were not adequate to bar federal review.  Having so concluded, the court

14  need not address his arguments that his procedural defaults should excused.

15      IV. *Cognizability*

16      Respondents argue that claims in Sonner's amended petition alleging ineffective assistance of

17  state post-conviction counsel are not cognizable in this federal habeas proceeding.[10]  The Supreme

18  Court has explicitly left open the question of whether there is an exception to the constitutional rule

19  that there is no right to counsel in collateral proceedings in cases where the initial-review collateral

20  proceeding is the petitioner's first opportunity to raise an ineffective assistance of trial counsel claim.

21  *See Martinez*, 132 S. Ct. at 1315.  However, 28 U.S.C. § 2254(I) precludes Sonner from relying on

22  the ineffectiveness of his post-conviction attorney as a ground for relief in cases, like this one,

23  brought under 28 U.S.C. § 2254.  As such, his various claims to that effect are not cognizable in this

24

25      [10]  Sonner has one stand-alone claim of ineffective assistance of post-conviction counsel (Claim XXX) and also alleges in other portions of his amended petition that post-conviction counsel was ineffective for failing to raise certain other claims.

26

1   proceeding.

2       V.  *Motion for Evidentiary Hearing*

3       Sonner asks for an evidentiary hearing to develop the factual record in relation to the motion

4   to dismiss.  Specifically, he claims that an evidentiary hearing will allow him prove (1) the procedural

5   bars asserted by respondents are not adequate to default petitioner's claims of federal constitutional

6   error; (2) the procedural bars asserted by respondents may be excused based on his allegations of

7   cause and prejudice, and that dismissal of his claims will result in a miscarriage of justice; and

8   (3) the grounds for equitably tolling the statute of limitations in this case.

9       As discussed above, doctrine of procedural default does not bar consideration Sonner's claims.

10  Thus, an evidentiary hearing on issues related to the adequacy or excusal of the applicable procedural

11  bars is not necessary.  As for the need for an evidentiary hearing on issues related to equitable tolling,

12  the court concludes as follows.

13      Because equitable tolling is a procedural issue, the restrictions on evidentiary hearings

14  imposed by 28 U.S.C. § 2254(e)(2) do not necessarily apply to Sonner's request.  Even so, he must

15  allege facts which, if true, would entitle him to relief in order to be entitled to an evidentiary hearing.

16  *See, e.g., Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006) (holding that petitioner should have

17  been granted a hearing by the district court because he alleged facts that, if true, may warrant

18  equitable tolling).

19      Sonner argues that an evidentiary hearing is necessary to resolve factual issues related to each

20  of the grounds for equitable tolling discussed above.  For each of those grounds, however, Sonner's

21  specific factual allegations, even if true, do not establish that extraordinary circumstances prevented

22  him from timely filing the claims contained in his amended petition.  At most he would be entitled to

23  equitable tolling until October of 2004 when he concluded discovery proceedings herein.  None of the

24  circumstances advanced by Sonner account for his delay of another fifteen months in filing the

25  amended petition.

26

1    Sonner's motion for an evidentiary hearing shall be denied.

2    **IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 132) is

3    GRANTED in part and DENIED in part.  For the reasons set forth above, the following claims in

4    petitioner's amended petition (ECF Nos. 96) are DISMISSED:  Claims A-F, J-Z, AA-FF, HH, JJ-OO,

5    PP-WW (except for PP4, TT2, TT10, and TT11), AAA-FFF, and LLL-YYY.

6    **IT IS FURTHER ORDERED** that petitioner's motion for an evidentiary hearing (ECF No.

7    156) is DENIED.

8    **IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the date

9    on which this order is entered within which to file their answer to petitioner's remaining claims.  In

10   all other respects, the schedule set forth in the scheduling order entered on January 9, 2012 (ECF No.

11   128), shall remain in effect.

12   **IT IS FURTHER ORDERED** that petitioner's motion for leave to file excess pages (ECF

13   Nos. 165) is GRANTED *nunc pro tunc* as of March 17, 2013.

14   DATED: March 26, 2013

15

16   _____

17   UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

24