UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL SONNER, | Case No. 2:00-cv-01101-ART-DJA |
| Petitioner, | ORDER |
| v. | |
| WILLIAM GITTERE, et al., | |
| Respondents. | |

In prior orders, this Court concluded that all of the claims in Michael Sonner's operative federal habeas petition (ECF No. 96), except for Claims G, H, I, M1, M3, N, GG, II, PP4, TT2, TT10, TT11, ZZ. GGG, HHH, and KKK, are barred from federal review by the procedural default doctrine absent a showing of cause and prejudice or a fundamental miscarriage of justice. ECF Nos. 280 at 10. The ourt gave Sonner an opportunity to demonstrate that he could make such a showing. ECF No. 285. With both parties having briefed the matter, the Court now concludes that Sonner has failed to demonstrate that the procedural default of his claims should be excused. However, the Court defers, until after merits briefing, its decision on whether initial state habeas counsel's ineffectiveness is cause to excuse the default of Sonner's ineffective assistance of trial counsel claims.

I. **Standards for consideration of procedurally defaulted claims**

Federal courts will consider a procedurally defaulted claim only if the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause requires a showing "that some objective factor external to the defense impeded counsel's

1

efforts to comply with the State's procedural rule ... [such as] a showing that the factual or legal basis for a claim was not reasonably available to counsel, ... or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and citations omitted). Prejudice requires "showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). The court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir. 1991). To establish that a fundamental miscarriage of justice would occur if a claim were not heard on the merits in federal court, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

**II.   Discussion**

Sonner's claims are procedurally defaulted because he failed to comply with Nev. Rev. Stat. § 34.726(1), Nevada's time limit for seeking post-conviction relief. *See* ECF No. 138-6. Nev. Rev. Stat. § 34.726(1) provides that a petition for post-conviction relief is untimely if filed later than one year after the entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one year after the Nevada Supreme Court issues its remittitur. Sonner argues the procedural default of his claims should be excused because he can establish both cause and prejudice and a fundamental miscarriage of justice. He also claims that an evidentiary hearing is necessary to resolve factual issues related to his arguments.

   **A. *Cause and prejudice***

Sonner argues that there were four "causes" of his procedural default in

the state court: (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, (3) ineffective assistance of initial state habeas counsel, and (4) deficiencies in Nevada's capital system. The Court addresses each in turn.

### 1. Ineffective assistance of trial counsel

Sonner argues that his trial counsel caused the default of 14 claims—Claims M, O–P, R, W, CC10, HH, KK–LL, NN–OO, PP7, and QQ–RR—because counsel failed to bring these claims to the trial court's attention or otherwise preserve them for appeal. In order for attorney error to constitute "cause" to excuse a procedural default, it must rise to the level of a constitutional violation of the right to counsel under *Strickland v. Washington*, 466 U.S. 478, 488 (1984). *Carrier*, 477 U.S. at 488.

With the exception of Claim NN, each of these claims allege some type of trial court error. Claim NN alleges prosecutorial misconduct during penalty phase closing argument. For each claim, Sonner points to what he contends is a corresponding ineffective assistance of counsel claim that establishes cause for the default. For many of the claims, however, he fails to establish a sufficient nexus between the default of the particular claim and trial counsel's alleged deficient performance.[1] Moreover, as Sonner concedes, the appellate courts in Nevada will consider claims of plain error or defects affecting substantial rights even if the issue was not brought to the attention of the trial court. *See Calvin v. State*, 147 P.3d 1097, 1101 (Nev. 2006) (citing Nev. Rev. Stat. § 178.602). In the absence of a more detailed showing, the Court is not convinced that ineffective

---

[1] For example, Claim M alleges that the trial court erred in refusing to suppress various statements made by Sonner. ECF No. 96 at 55-62. Sonner cites Claim EE8 as cause for the default of Claim M. ECF No. 301 at 50. Claim EE8 alleges that counsel was ineffective by failing to present witnesses, object to evidence, or adequately prepare for the suppression motion hearing. ECF No. 96 at 51-52. Even if it was ineffective assistance, counsel's alleged conduct had no bearing on Sonner's ability to raise Claim M in compliance with Nevada's procedural rules.

3

1 assistance of trial counsel prevented or impeded Sonner from raising any of the
2 14 claims on direct appeal.

### 2. Ineffective assistance of appellate counsel

Sonner argues that his appellate counsel caused the default of Claims A–F, J–AA, BB1, BB4, CC, HH, JJ, NN1, OO–SS (except PP4), UU–WW, AAA–DDD, LLL–RRR, VVV, and YYY, by failing to raise them on direct appeal. Because a defendant's constitutional right to counsel extends to his direct appeal, an attorney's deficient performance during an appeal may provide cause to excuse a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 754 (1991); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). However, the ineffectiveness claim advanced as cause must have been independently exhausted in state court. *Carrier*, 477 U.S. at 489. If the ineffectiveness claim is itself defaulted, it cannot serve as cause unless the petitioner can establish cause and prejudice with respect to that ineffectiveness claim too. *Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000).

Respondents argue that Sonner has not exhausted the ineffective assistance of appellate counsel claims that he cites as cause because he did not present the claims in his initial post-conviction proceeding and, in his second post-conviction proceeding, he merely asserted a catchall claim that appellate counsel was ineffective for failing to raise all meritorious claims. Sonner concedes that the claims were not presented in his initial post-conviction proceeding, but disputes that the claims were not exhausted in his second post-conviction proceeding. Even if the ineffective assistance of appellate counsel claims were exhausted in that proceeding, however, they are nonetheless procedurally defaulted. *See* ECF No. 138-6. Because he fails to show that the default should excused due to cause and prejudice, Sonner cannot rely on ineffective assistance of appellate counsel as cause to excuse the default of the claims at issue.

4

### 3. Ineffective assistance of initial state habeas counsel

Sonner argues that ineffective assistance of counsel in his first state habeas proceeding serves as cause to excuse the default of Claims DD–FF, MM, TT, and YYY. Sonner relies on *Martinez v. Ryan*, 566 U.S. 1 (2012), in which the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. The parties agree that the Court should defer its decision on whether Sonner can make the necessary *Martinez* showing until after Sonner's claims have been briefed on the merits. Thus, the Court will reserve judgment on the issue until that time.

### 4. Deficiencies in Nevada's capital system

Sonner argues that deficiencies in Nevada's capital system at the trial, appellate, and post-conviction level prevented him from developing and presenting all his claims in compliance with Nevada's procedural rules. He cites insufficient funding and resources for public defenders in capital cases at the time of his trial, the Nevada Supreme Court's failure to provide fair appellate and post-conviction review in capital cases, and the public pressure Nevada's popularly-elected judges face when adjudicating capital cases. According to Sonner, he would not have been sentenced to death, would have had his sentence reversed, or would have been in a position to raise all meritorious claims if not for these deficiencies.

Sonner's arguments are unavailing. As noted above, ineffective assistance of trial or appellate counsel can provide cause for a procedural default if it rises to the level of a constitutional violation. While lack of funding or resources may be a contributing factor to counsel's allegedly deficient representation, the relevant analysis is the one already discussed in sections A.1. and A.2.

The remaining alleged deficiencies—i.e., the Nevada Supreme Court's failure to provide fair appellate and post-conviction review in capital cases and

the pressure faced by popularly-elected judges—strike at the heart of why prisoners are entitled to federal habeas review. Alleged shortcomings or injustices in the state process that resulted in the prisoner's conviction and sentence are the intended subjects of a petition for writ of habeas corpus. They are not, however, objective factors external to the defense that stood in the way of Sonner raising his habeas claims in compliance with Nevada's procedural rules.

### B. *Fundamental miscarriage of justice*

Sonner claims the failure to consider his habeas claims would result in a miscarriage of justice because he stands to be executed even though he (1) was incompetent at the time of his trial, (2) was insane at the time of the crime, (3) is currently mentally ill, and (4) was convicted by a jury containing at least one biased juror. Sonner recognizes that "the miscarriage of justice exception applies when a petitioner 'can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense or, in the capital sentencing context, of the aggravating circumstances rendering the inmate eligible for the death penalty.'" ECF No. 292 at 117 (quoting *Dretke v. Haley*, 541 U.S. 386, 388 (2004)). The Supreme Court has "emphasized 'the narrow scope' of the exception." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); see Carrier, 477 U.S. at 495-96, 106 S.C (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). Nonetheless, Sonner argues that the exception includes the theories he advances.

In *Schlup*, the case that clarified the standard that governs the miscarriage of justice inquiry, the Court held that "[t]o ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that

6

the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence." *Schlup* 513 U.S. at 321. In a subsequent case the Court emphasized that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Sonner fails to cite a single case holding that incompetence at the time of trial qualifies as a fundamental miscarriage of justice for the purpose of excusing a petitioner's procedural defaults.

Insanity at the time of the crime presents a closer question. In *Jaramillo v. Stewart*, 340 F.3d 877, 833 (9th Cir. 2003), the Ninth Circuit considered petitioner Jaramillo's claim of justification based on self-defense under *Schlup*'s actual innocence rubric. The problem for Sonner is that *Schlup* requires a petitioner to support a claim of actual innocence with "new reliable evidence" such that it is more likely than not that "no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 324 (citing "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" as examples of "new reliable evidence"). In *Jaramillo*, for example, Jaramillo discovered the existence of an undisclosed witness who swore that Jaramillo's victim initiated the aggression that resulted in the victim's death and that he (the witness) had been interviewed by the prosecution shortly after the incident. *Jaramillo*, 340 F.3d at 879. Jaramillo also proffered an autopsy report which showed that his victim "covered his right hand with a glove, and then wrapped a bandana around his palm … to protect his hand from the non-hilted shank" and "photographs taken by the medical examiner [that] appear[ed] to show that the same fabric tied around [the victim's] hand was also found on the shank, supporting Jaramillo's claim that [the victim] had attempted to use the shank against him." *Id*. at 883.

//

Here, Sonner relies on the declarations of a clinical psychologist, Dr. Karen Froming, who evaluated him in 2002, 18 years after he committed the crimes at issue. Dr. Froming's initial report contains a lengthy social history for Sonner and her neuropsychological assessment of him. ECF No. 183-5. In a supplemental report, she takes issue with the evaluations of the six doctors who evaluated Sonner in 1994. ECF No. 183-13. Nowhere in either report, however, does she address whether Sonner may have met the standard necessary for a successful insanity defense in Nevada. Sonner notes that his "social history includes evidence of exposure to toxins *in vitro*, physical and mental abuse as a child, toxins as a result of substance abuse, incest, and a life-long history of mental health disabilities." ECF No. 301 at 37. That falls short, however, of showing that he was insane at the time of the crime—i.e., that he was incapable of knowing or understanding the nature and quality of his act or incapable of distinguishing right from wrong. *See* ECF No. 208-16. In sum, Sonner has not proffered new evidence establishing that he can meet the *Schlup* standard in relation to his insanity defense.

Sonner argues that dismissal of his claims will result in a miscarriage of justice because his mental illness renders him ineligible for the death penalty. He attempts to analogize his situation to intellectually disabled defendants and defendants who were juveniles at the time of the crime. *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding that the execution of intellectually disabled offender violates the Eighth Amendment); *Roper v. Simmons*, 543 U.S. 551, 578 (2005) ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."). This argument lacks merit for the simple reason that Sonner fails to cite any persuasive legal authority supporting his position that he is ineligible for the death penalty due to his alleged mental illness. Finally, Sonner's argument based on the presence of a biased juror on his jury is

8

explicitly foreclosed by language in *Schlup*. *See Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

Based on the foregoing, Sonner has not established that failure to consider his defaulted claims will result in a miscarriage of justice.

### C. *Evidentiary hearing*

Sonner argues that this Court should hold an evidentiary hearing to resolve whether he can establish cause and prejudice or a miscarriage of justice. He contends that, unless the Court rules in his favor based on the existing record, an evidentiary hearing is necessary to resolve factual disputes related to the arguments discussed above. The Court does not agree.

Sonner's cause arguments based on ineffective assistance of trial counsel and ineffective assistance of appellate counsel fail as a matter of law. The Court also sees no factual issues that must be resolved in relation to Sonner's miscarriage of justice arguments. Sonner's claims of ineffective assistance of initial post-conviction counsel must be analyzed under *Martinez*, which requires the Court to determine the underlying ineffective assistance of trial counsel claim is "substantial" and whether the petitioner had ineffective counsel during his initial post-conviction review proceeding. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. at 14). The Court recognizes that this can be a fact-intensive inquiry. However, in *Shinn v. Ramirez*, 596 U.S. 366, 387 (2022), the Supreme Court concluded that the equitable rule announced in *Martinez* does not permit a federal court to dispense with the limits on evidentiary hearings imposed by 28 U.S.C. § 2254(e)(2)[2] "because a prisoner's

---

[2] Section 2254(e)(2) provides that, if a prisoner "has failed to develop the factual basis of

9

1  state postconviction counsel negligently failed to develop the state-court
2  record." *Ramirez*, 596 U.S. at 371. The Court held that "a federal habeas court
3  may not conduct an evidentiary hearing or otherwise consider evidence beyond
4  the state-court record based on ineffective assistance of state postconviction
5  counsel." *Id.* at 382.

6  Sonner argues that *Ramirez* does not bar a hearing because he is not
7  asking for a hearing on the merits of his ineffective assistance of trial counsel
8  claims, only on the issue of cause and prejudice. While that may be, *Ramirez*
9  makes it abundantly clear that evidence adduced at such a hearing cannot be
10 considered "to evaluate the merits of the underlying ineffective-assistance
11 claim." *Id.* at 388-89. Thus, a hearing on the *Martinez* issue would be nothing
12 more than an academic exercise and a poor use of judicial resources.

13 **III.  Conclusion**

14 Sonner has not demonstrated that the procedural default of the claims
15 that he presented in his second state post-conviction proceeding should be
16 excused. However, several of those claims are ineffective assistance of trial
17 counsel claims that are subject to a *Martinez* analysis. For those claims, the
18 Court will wait until the parties have briefed the merits of the claims before
19 making a *Martinez* ruling. The Court also recognizes that three other claims—
20 Claims M1, M3, and N—are not procedurally defaulted and have yet to be
21 addressed on the merits.

22 IT IS THEREFORE ORDERED that all of the claims in Sonner's operative
23 federal petition (ECF No. 96), except for Claims M1, M3, N, DD–FF, MM, TT, and
24 YYY, are barred from federal review by the procedural default doctrine.

25 IT IS FURTHER ORDERED that the respondents' answer to the remaining
26 claims is due within 120 days from the entry of this order. Sonner will have 90

---

28 a claim in State court proceedings," a federal court may hold "an evidentiary hearing on the claim" in only two circumstances, neither of which apply to in this case.

10

1  days following service of an answer to file and serve a reply. Respondents shall
2  thereafter have 60 days following service of a reply to file and serve a response
3  to the reply.

5  Dated this 11th day of February, 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

11